**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| MICHAEL PRIVETTE, | * |
| Plaintiff, | * |
| v. | *      Case No.: GJH-18-2874 |
| | * |
| WARDEN FRANK B. BISHOP, *et al.*,[1] | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

*Pro se* Plaintiff Michael Privette, who is currently incarcerated at North Branch Correctional Institution ("NBCI") in Maryland, brought this civil action against Defendants William Beeman, R.N., Holly Pierce, N.P., and Ms. Robbin[2] (collectively, the "Medical Defendants") and Defendants Warden Frank B. Bishop and Lieutenant Jack Johns (collectively, the "Correctional Defendants") alleging that he has received constitutionally inadequate and negligent medical care. ECF Nos. 1, 4, 5, 13. Pending before the Court are Medical Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 20, Correctional Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 23, and Plaintiff's Motion for Judgment, ECF No. 24. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment are construed as Motions for Summary Judgment and granted, and Plaintiff's Motion for Judgment is denied.

---

[1] The Clerk shall amend the docket to reflect the correct names of Defendants Warden Frank B. Bishop, Bill Beeman, Holly Pierce, and Lieutenant Jack Johns.
[2] "Ms. Robbin" has not yet been served.

1

**I. BACKGROUND**

    **A. Plaintiff's Claims**

On September 14, 2018, Plaintiff sent a letter to the Court asking to file a Complaint pursuant to 42 U.S.C. § 1983 for institutional neglect, medical incompetence and neglect, and constitutionally inadequate medical care in violation of the Eighth Amendment. ECF No. 1. He subsequently provided additional details through three supplemental filings with the Court. ECF Nos. 4, 5, 13.

Plaintiff alleges that in 2011, he suffered an injury to his left leg that required surgery in order to place "eight screws" and a titanium rod "aligned with his fibula to support the bone." ECF No. 1 at 1.[3] He continues to have "major difficulties" with his left leg, including burning sensations, numbness, and an inability to move his toes or use the leg to walk. *Id.*

While incarcerated, Plaintiff claims to have been treated at different points by Defendants Robbin and Pierce. ECF No. 13 at 3. He first saw Defendant Robbin when he could barely walk, but he received no medical treatment, aside from an x-ray. *Id.* Plaintiff then saw Defendant Pierce, who said she would schedule a follow-up appointment with a specialist, but she never did. *Id.* Plaintiff contends that as a nurse practitioner, Defendant Pierce should have known that if, for example, the screws in his knee were loose, that would not show up on an x-ray and thus she should have utilized other methods to diagnose his pain. *Id.* Plaintiff also claims that the Administrative Remedy Procedure ("ARP") coordinator, Defendant Johns, told him that he would be scheduled to meet with an orthopedist, but he has yet to see one. *Id.* at 1–2. Finally, Plaintiff states that he went eleven months without pain medication or physical therapy, *id.* at 4,

---
[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

but he also claims that at one point he was given Naproxen before a stronger medication was prescribed, ECF No. 1 at 1.

Plaintiff claims that when he raised issues about his leg, he "was constantly rerouted to the same individuals," including Medical Defendants and Defendant Johns. ECF No. 4. Plaintiff also claims that Defendant Warden Bishop was made aware of "this issue," based on the "multiple ARP directed to him for review before they were rerouted" to Defendant Johns. ECF No. 4; ECF No. 13 at 3.

On August 21, 2018, Plaintiff filed an ARP (No. NBCI-1358-18), in which he complained that he was not being seen by medical providers for pain management. ECF No 4-1. On October 11, 2018, the Acting Warden found the ARP meritorious, stating, in part:

> Specifically, you claim that you are receiving inadequate medical care by not being seen for chronic care and that sick call requests are going unanswered. Investigation found that you have not been seen for chronic care since 12/27/2017. Medical records has been notified and you are scheduled with the Regional Medical Director on 10/9/18 to discuss chronic care issues. Your medical file shows that all sick call requests submitted by you have been responded to. Medical records staff shall be educated on the importance of scheduling chronic care clinics within the established time frame to ensure adequate medical care is being provided.

ECF No. 4-1.[4]

### B. Defendants' Responses

In response to Plaintiff's Complaint, Medical Defendants and Correctional Defendants have each filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF Nos. 20, 23. Defendants filed their Motions with supporting exhibits and declarations. Plaintiff did not

---

[4] In a correspondence to the Court, Plaintiff asks for assistance in obtaining sex addiction treatment and for help in locating treatment for Attention Deficit Hyperactive Disorder (ADHD). ECF Nos. 7, 15; *see also* ECF No. 20-4 at 120 (stating there are no sex offender treatment programs in the Division of Correction). If Plaintiff wants to raise claims about his mental health treatment, he may file a separate complaint. He will be sent a blank complaint form to assist him.

dispute the evidence provided by Defendants, but instead filed a Motion for Judgment. ECF No. 24.[5]

The evidence provided by Defendants is summarized as follows.

Prior to arriving at NBCI, for the period of April to November 2017, Plaintiff was prescribed Naproxen for pain relief as needed. ECF No. 20-5 ¶ 5. Because Plaintiff's Naproxen prescription was on an "as needed basis," he needed to request a renewal in order to receive it again. ECF No. 25-5 ¶ 6. Although he submitted multiple sick calls for left foot pain, he never actually filed a sick call slip requesting renewal of Naproxen. *Id.*; ECF No. 20-4 at 68, 75, 76, 84, 92, 96. Plaintiff was scheduled to be seen by a provider three times in a chronic care clinic in October and November 2017, during which the prescription could have been renewed. ECF No. 20-5 ¶ 5. Plaintiff, however, refused to attend all three scheduled visits. *Id.* Consequently, the prescription expired as scheduled on November 16, 2017. *Id.*; *see also* ECF No. 20-4 at 65, 67, 70.

In December 2017, Plaintiff informed a nurse at sick call that his medication had expired, and she referred him to a medical provider. ECF No. 20-5 ¶ 7; ECF No. 20-4 at 77. The nurse advised him to purchase Ibuprofen from the commissary in the meantime. ECF No. 20-5 ¶ 7; ECF No. 20-4 at 77. According to Dr. Asresahegn Getachew, the NCBI Medical Director during the relevant period, Ibuprofen was an acceptable substitute for Naproxen. *Id.* ¶ 7.

In January 2018, Plaintiff's Naproxen prescription was renewed on an as needed basis through May 17, 2018. ECF No. 20-5 ¶ 7. On February 1, 2018, Plaintiff missed his physical therapy session. ECF No. 20-4 at 88. On February 15, 2018, Plaintiff was determined

---

[5] Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was notified that he may respond to Defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment and file affidavits, declarations, and exhibits to contest Defendants' submissions. ECF Nos. 21, 25. Plaintiff chose not to submit any affidavits or exhibits in opposition.

"functionally asymptomatic" after completing physical therapy and was placed on self-management.[6] *Id*. at 89. When his Naproxen prescription expired on May 17, 2018, Plaintiff did not submit a sick call slip requesting renewal. ECF No. 20-5 ¶ 8. On July 30, 2018, during a nurse sick call, it was noted that Plaintiff's pain medication prescription had expired, so he was referred to a provider and the prescription was renewed on August 16, 2018 and again on August 31, 2018 through December 30, 2018. *Id.*

On August 23, 2018, Nurse Robin Shively saw Plaintiff for complaints of lower left leg pain. ECF No. 20-4 at 99. Plaintiff was brought to the medical office in a wheelchair because he was unable to walk. *Id.* He reported worsening pain and it was observed that he was unable to get on to the table. *Id.* Plaintiff reported no injury or trauma to the leg, and Nurse Shively did not observe any redness or swelling. *Id.* She referred Plaintiff to a medical provider and instructed him to avoid work or recreation until he could be seen. *Id.* A subsequent x-ray showed that the hardware in Plaintiff's leg was stable. ECF No. 20-5 ¶ 11. When Plaintiff was seen by a provider after the x-ray results were obtained, he was able to walk on his left leg with an unsteady gait. *Id.* He was also seen five days later again walking on his left leg with an unsteady gait. *Id.*

On August 24, 2018, Plaintiff was seen by Michael Klepitch, R.N. for lower left leg pain because he had been holding his cell door slot open and so the custody officers agreed to call a medical provider to speak with him. ECF No. 20-4 at 101. Plaintiff reported to Nurse Klepitch that he was upset that he had not been seen by a provider for leg pain and that he wanted to be placed back on Tegretol. *Id.* Nurse Klepitch reviewed the record with Defendant Pierce, an x-ray of the lower left leg was ordered, and Plaintiff was referred to a provider for follow up. *Id.*

---

[6] The record does not reflect other times Plaintiff was provided physical therapy.

On September 12, 2018, Defendant Pierce saw Plaintiff for his lower left leg and foot pain. ECF No. 20-4 at 106. Plaintiff told her that the pain started in 2016 after he injured his leg playing basketball. *Id.* He said he was in constant pain and had difficulty sleeping. *Id.* Defendant Pierce noted that Plaintiff had an x-ray on August 24, 2018 that was within normal limits, his left knee had no gross abnormalities and was symmetrical to the right knee, and his gait was unsteady. *Id.* She also observed that the knee had full range of motion, there was no swelling, and the left foot was tender. *Id.* Defendant Pierce ordered new x-rays and ordered a follow-up with a provider after the results were obtained. *Id.* at 107. At the time, Plaintiff had a current prescription for "Naprosyn 375 mg." *Id*.

In December 2018, Plaintiff was prescribed Tegretol for pain relief through April 2019. ECF No. 20-5 ¶ 5. In March 2019, Plaintiff reported to a medical provider that Tegretol effectively controlled his chronic pain, however, his lab tests indicated that he had not been taking the Tegretol, so Cymbalta, which is FDA-approved to treat neuropathic pain, was prescribed instead. *Id.* The prescription was valid through July 2019. *Id.*

There is no record that Medical Defendant Beeman ever provided nursing care to Plaintiff at NBCI. *Id*. ¶ 14.

Dr. Getachew opines that Plaintiff's left ankle currently does not warrant an orthopedic consultation and he is receiving appropriate medical care for the condition. ECF No. 20-5 ¶ 12. She notes that in 2017 and 2018, Plaintiff received x-rays on four separate occasions. *Id.* ¶ 11. All results were within normal limits and revealed "stable hardware in place." *Id.*; ECF No. 20-4 at 31, 74, 103, 113. Dr. Getachew also acknowledges that, "for unknown reasons," Plaintiff was not scheduled for chronic care visits between December 2017 and August 2018. ECF No. 20-5 ¶ 13. She states that it is "an aspirational goal to see chronic care patients every 90 days," and

opines that "the interruption in [Plaintiff's] chronic care encounters did not result in any medical harm to [Plaintiff]." *Id.* Plaintiff is again being seen in the chronic care clinic. *Id.* He continues to have regular medical care through the chronic care clinic and more immediate care through the sick call process. *Id.* ¶ 15.

Regarding Correctional Defendants Bishop and Johns, both state that medical services are provided to Division of Correction inmates by private medical contractors, and they deny interfering with or delaying Plaintiff's medical care. ECF No. 23-2 ¶¶ 3, 5; ECF No. 23-3 ¶¶ 8, 9. Defendant Johns is the ARP Coordinator at NBCI. ECF No. 23-3 ¶ 3. His duties include receiving, acknowledging, and assigning investigation of ARP complaints submitted by NBCI inmates. *Id.* ¶ 4. Johns' only direct involvement in any ARP complaint filed by Plaintiff was with ARP No. NBCI-1358-18; he signed an acknowledgement of receipt and then assigned it to the Office of Inmate Services for investigation. *Id.* ¶ 6.[7] Defendant Johns has no medical training and it is beyond the scope of his responsibilities to perform any medical treatment or prescribe a particular course of treatment for an inmate. *Id.* ¶ 8. He has no authority to dictate the kind of treatment an inmate receives or to influence the medical decisions of the contractual medical providers. *Id.* Regarding Plaintiff's allegation that Defendant Johns told him he would be scheduled to see an orthopedist, Defendants Johns is not a medical practitioner and therefore cannot schedule a medical specialist to see an inmate. ECF No. 20-4 ¶ 12; ECF No. 23-3 ¶ 8.

Similarly, Defendant Warden Bishop states that he has had no personal involvement in providing medical care to any NBCI inmate. ECF No. 23-2 ¶ 3. Specifically, he has no authority or medical training to order, recommend, or influence the decisions of health care providers to

---

[7] Plaintiff's ARP Index Report lists seven ARP complaints. ECF No. 24-4 at 2. None were presented to the Inmate Grievance Office to exhaust administrative remedies. ECF No. 23-5. Of these ARPs, three involved concerns about his leg or his leg condition. One, as noted above, was found meritorious. The other two were dismissed, one as repetitive to the meritorious complaint, and the other as untimely. ECF No. 24-4 at 2.

7

perform any medical procedure or treatment. *Id.* Defendant Bishop relies on and defers to the expertise of the medical providers in matters of medical complaints. *Id.* ¶ 4. He denies interfering with or delaying Plaintiff's medical care. *Id.* ¶ 5.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations

8

devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendants' Motions are styled as a Motion to Dismiss or, in the Alternative, for Summary Judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss or, in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving

party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

While the Court may rule on a motion for summary judgment prior to commencement of discovery, *see, e.g.*, *Demery v. Extebank Deferred Compensation Plan (B)*, 216 F.3d 283, 286 (2d Cir. 2000), Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be denied when the nonmovant has not had the opportunity to discover information that is essential to his opposition." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (internal citation and quotation marks omitted). "To obtain Rule 56(d) relief, the non-moving party bears the burden of showing how discovery could possibly create a genuine issue of material fact sufficient to survive summary judgment or otherwise affect the court's analysis." *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015).

Moreover, where, as here, the plaintiff is proceeding *pro se*, the Court reads the pleadings generously. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At the same time, the Court must also fulfill its "affirmative obligation . . . to prevent factually unsupported claims and defenses

from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted).

## III. DISCUSSION

### A. Procedural Posture

As an initial matter, the Court will construe Defendants' Motions as Motions for Summary Judgment because Plaintiff has notice of Defendants' requests for summary judgment and he has not requested additional discovery. Plaintiff knew from the title of Defendants' Motions that they were pursuing summary judgment, *see* ECF No. 20, 23, and the Clerk informed Plaintiff about the Motions and the need to file an opposition. ECF Nos. 21, 25. Plaintiff filed a Motion for Judgment, seemingly in response to Defendants' dispositive motions, and he has not requested discovery or filed anything that the Court could interpret as a Rule 56(d) motion. Because the Court will consider documents outside of Plaintiff's Complaint in resolving the dispositive motions, the Court will treat Defendants' Motions as Motions for Summary Judgment.

### B. Eight Amendment Claims

Defendants contend that Plaintiff's Eighth Amendment Claim must be dismissed because the evidence shows that they were not deliberately indifferent to his medical needs and there was no denial of medical care. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII; *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). It "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The protection conferred by the Eighth Amendment also imposes on prison

11

officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 320 (1986) (internal quotation marks omitted); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

To establish an Eighth Amendment claim based on denial of medical care, a plaintiff must demonstrate that Defendants' acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "[I]t is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178 (emphasis in original). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted."

*Farmer*, 511 U.S. at 844. The requisite state of mind is thus "one of deliberate indifference to inmate health or safety." *Id.* at 834 (internal quotation marks omitted). For a plaintiff to prevail, the treatment rendered "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted), overruled in part on other grounds by *Farmer*, 511 U.S. at 837.

"[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto*, 841 F.3d at 225 (internal citation and quotation marks omitted). Mere negligence or malpractice does not rise to the level of a constitutional violation. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith,* 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle*, 429 U.S. at 106).

### i. Medical Defendants

The evidence demonstrates that Medical Defendants were not deliberately indifferent to Plaintiff's medical needs. In fact, the evidence shows that Plaintiff was treated by various physicians, nurses, and nurse practitioners for his leg condition and pain; specifically, he was examined, given x-rays, prescribed medication, and offered physical therapy.

With respect to Defendant Beeman, there is no evidence that he ever treated Plaintiff, nor does Plaintiff advance specific claims against him. Thus, he could not have been deliberately indifferent to Plaintiff's medical needs and any claims against Defendant Beeman must be dismissed.

Regarding Defendant Pierce, the evidence shows that she "responded reasonably to the risk" posed by Plaintiff's leg injury by ordering x-rays and a follow-up with a provider. *See*

*Farmer*, 511 U.S. at 844. Plaintiff claims that as a nurse practitioner, she should have known that an x-ray would not be conclusive as to the condition of the hardware in his leg. There is no evidence in the record to suggest that this statement about the x-ray is true, and in any event, "an inadvertent failure to provide adequate medical care" does not amount to deliberate indifference, so Plaintiff's disagreement with the course of treatment Defendant Pierce provided thus cannot amount to deliberate indifference. *See Estelle*, 429 U.S. at 105–6; *see also Miltier*, 896 F.2d at 851 (requiring a defendant's actions to amount to "gross[] incompetence" to rise to the level of deliberate indifference).

To the extent that Defendant "Ms. Robbin" is intended to be Nurse Robin Shively, Plaintiff makes no allegations, nor does the record suggest, that she disregarded Plaintiff's medical symptoms. She recommended that he avoid work and recreation until he could see a provider, and she arranged for him to do so. Plaintiff alleges no facts and provides no evidence to suggest that Nurse Shively's conduct rises to the level of deliberate indifference to a serious medical need necessary to prove a constitutional violation.

Importantly, as to all Medical Defendants, Plaintiff makes no allegation that these providers were actively responsible for the gap in his chronic care clinic visits, medication renewals, or failure to receive a follow-up appointment with a provider and there is no evidence to suggest that they were. Because the evidence in the record, even viewed in the light most favorable to Plaintiff, establishes that he received constitutionally adequate medical care from Medical Defendants, Plaintiff has failed to meet his burden to identify any disputes of material fact. Accordingly, the Court will grant summary judgment in favor of Medical Defendants.[8]

---

[8] To the extent that Plaintiff may raise colorable state law claims of medical malpractice and negligence, the Court declines to exercise supplemental jurisdiction and thus will dismiss such claims without prejudice. *See* 28 U.S.C. § 1367(c)(3).

####### ii. Correctional Defendants

There is also no evidence to establish a constitutional violation by Correctional Defendants. First, as the Court has already concluded, Medical Defendants did not provide constitutionally deficient care to Plaintiff, so Correctional Defendants cannot be charged with knowing that Plaintiff received constitutionally deficient care. Moreover, even if Plaintiff had received constitutionally deficient medical care, Correctional Defendants' involvement with Plaintiff's ARP filings would not be sufficient to establish participation in a constitutional violation because mere receipt and processing of an ARP, without more, is insufficient to impose liability. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (finding that allegation that warden "rubber-stamped" grievances was not enough to establish personal participation). Indeed, absent actual personal participation in the alleged violation, the claim fails to allege a basis for Correctional Defendants' liability. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Finally, there is no evidence to suggest that Correctional Defendants improperly interfered with Plaintiff's medical care or that they should have intervened in order to provide him with a different course of treatment. Neither Defendant Bishop nor Defendant Johns have authority to dictate the medical care provided to an inmate, and, as non-medical correctional officials, they were entitled to rely on the medical judgment and expertise of prison physicians and medical staff concerning the course of treatment necessary for Plaintiff's condition. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *Miltier*, 896 F.2d at 854–55 (4th Cir. 1990) (stating that supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may only be found to have been deliberately indifferent by intentionally interfering with an inmate's medical treatment ordered by such personnel), overruled in part on

other grounds by *Farmer*, 511 U.S. at 837. Accordingly, Correctional Defendants are also entitled to summary judgment.

Because Defendants are entitled to judgment as a matter of law, Plaintiff's Motion for Judgment is denied.[9]

**IV.    CONCLUSION**

For the foregoing reasons, Medical Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment is granted, Correctional Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment is granted, and Plaintiff's Motion for Judgment is denied. A separate Order shall issue.

Date: <u>March   5, 2020</u>                                                              /s/_____
                                                                                                           GEORGE J. HAZEL
                                                                                                           United States District Judge

---

[9] To the extent that Plaintiff asks for appointment of counsel in this case due to his general lack of familiarity with the law, he presents no extraordinary circumstances to warrant appointment. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975) (stating that a federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary and may be considered where an indigent claimant presents exceptional circumstances).